BALFOUR et al. v. SAN JOAQUIN VALLEY BANK et al.

(Circuit Court, N. D. California. September 20, 1906.)

No. 13,901.

1. ACCOUNT—EQUITY—JURISDICTION—REMEDY AT LAW.

While an account, even though composed of many items, does not necessarily entitle a litigant to invoke the jurisdiction of equity, yet, the jurisdiction at law and in equity being concurrent, when it is clearly shown that the nature and extent of the dealings have been such as to require an accounting, which would be impracticable for a jury to make, a court of equity will entertain jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Account, §§ 62–70.]

2. SAME.

A bill by a depositor against a bank for an accounting states a case cognizable in equity, where it shows that the business was all transacted on the part of complainants by an agent, the transactions covered a period of five years, the deposits aggregated about $2,500,000, and the items involved numbered over 5,000, and where it further alleges that defendant diverted funds from the account and applied them in payment of personal obligations of the agent, and prays for discovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Account, §§ 62–70.]

3. SAME—DISCOVERY.

A discovery, sought through interrogatories in a bill for an accounting or other equitable relief, does not belong to the auxiliary jurisdiction exercised by courts of equity in aid of actions at law, but is only incidental to the equitable suit, and is not in such case to be confounded with discovery in its original and strict signification.

4. SAME—LACHES.

A bill in equity, filed in a federal court within the time permitted by the state statute of limitations, and which charges actual, positive fraud on the part of defendant, is not demurrable on the ground of laches, because complainant did not sooner discover the fraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 237.]

In Equity. On demurrer to bill.

Charles Page, E. J. McCutchen, and W. S. Burnett, for complainants.

E. S. Pillsbury, for defendants.

WHITSON, District Judge. Defendants have demurred for want of equity in the bill of complaint. It is argued that complainants have disclosed by the bill a knowledge of the matters which they would discover; that it is shown upon its face that they are in possession of sufficient information to bring and successfully maintain, if the allegations are true, an action at law for the recovery of the amounts alleged to have been misappropriated by the defendant bank; that the facts pleaded simply disclose an indebtedness, the several amounts claimed being known to the complainants, for they are set out by appropriate allegations. For these reasons it is contended that there is a plain, speedy, and adequate remedy at law, arising out of the simple relation of debtor and creditor, and that the complications growing out of the accounts do not render the cause one of equitable cognizance.

1. In matters of account the jurisdiction in equity is concurrent with that at law. The object in either case is the recovery of a money judgment. The result sought is the same; the methods are different. Pomeroy's Equity (3d Ed.) §§ 173, 174. While an account, even though it be composed of many items, does not necessarily entitle a litigant to invoke the jurisdiction of equity, yet, the jurisdiction being concurrent, when it is clearly shown that the nature and extent of the dealings have been such as to require an accounting, which it would be impracticable for a jury to make, then a court of equity will assert its jurisdiction, and, in the interest of justice, apply its more flexible remedies, in order that a full hearing may be had with deliberation, and an accurate result be obtained. As to just when such a state of facts exists rests somewhat in discretion. 6 Pomeroy's Equity, § 930. At section 927, vol. 6, the author thus states the rule:

"It is not in every matter of account cognizable at law that equitable jurisdiction will be exercised; the general rule being that a proper case is presented when the remedies at law are inadequate."

Section 723 of the Revised Statutes [U. S. Comp. St. 1901, p. 583] prohibits the federal courts from entertaining suits in equity where "a plain, adequate and complete remedy may be had at law." While it was said in Buzard v. Houston, 119 U. S. 347–351, 7 Sup. Ct. 249, 30 L. Ed. 451, that the statute is only declaratory of the rule which existed before its passage, yet the language used certainly shows the intention of Congress to emphasize, at least, if not to enlarge upon, it; for, if an action at law cannot afford a "complete" remedy, manifestly it was intended that equity should intervene to do so. The Supreme Court has often announced this view. In Walla Walla v. Walla Walla Water Company, 172 U. S. 12, 19 Sup. Ct. 82, 43 L. Ed. 341, it was said:

"This court has repeatedly declared in affirmance of the generally accepted proposition that the remedy at law, in order to exclude a concurrent remedy at equity, must be as complete, as practical, and as efficient to the ends of justice and its prompt administration as the remedy in equity. Boyce's Executors v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Insurance Co. v. Bailey, 13 Wall. 616, 621, 20 L. Ed. 501; Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 32 L. Ed. 1005; Tyler v. Savage, 143 U. S. 79, 95, 12 Sup. Ct. 340, 36 L. Ed. 82."

Equity has jurisdiction, unless the remedy at law is "complete, sufficient, and certain." 1 Pomeroy's Equity (3d Ed.) § 178. To the same effect are: Fidelity Deposit Company v. Fidelity Trust Company (C. C.) 143 Fed. 152–159; McMullen Lumber Company v. Strother, 136 Fed. 295, 69 C. C. A. 433; Hayden v. Thompson, 71 Fed. 60–64, 17 C. C. A. 592; Fenno v. Primrose (C. C.) 116 Fed. 49.

We must look to the bill to ascertain whether it presents features which require the interposition of equity, to the end that full relief may be granted. Briefly summarized, the allegations upon which it is sought to sustain the jurisdiction, in so far as they need be noticed, are as follows: Lane, being the agent of complainants and their predecessors, opened an account with the defendant bank in their name. To make up this account he drew drafts upon complainants from time to time, the proceeds of which were deposited as the drafts were honored. He drew checks against the account in the name of his principal, signing himself as agent. The transactions involved cover a period of about five years, during which $2,427,270.65 was deposited in said account, and checks were drawn against the account for $2,502,-389.01. More than 5,000 individual drawings were made. Complainants have propounded 587 interrogatories relating to checks drawn upon this account. The bank diverted funds from the account, and applied the same to the personal obligations of Lane. It permitted him to overdraw the account, by honoring his checks without authority from the principal, and without inquiring as to the extent of his powers. It sold him a portion of its capital stock and appropriated the funds of complainants in payment therefor, and, but for the wrongful diversion and misapplication of the funds of complainants, there would be at least $100,000 to their credit now.

This involves an inquiry into the amount of money which went to the credit of the complainants in the bank, together with the amount which it paid out for the benefit of and for the account of complainants, and what amount, if any, the bank diverted in payment for its own stock which it sold to Lane. It involves the ascertainment of what amount of the funds of complainants was used by it to cover the overdraft which the bank permitted Lane to make. It involves the computation of interest upon the several amounts, if any, that the defendant may have improperly applied, either to the indebtedness of Lane, to the overdraft created by him, or to checks drawn by him for his personal account, from the several dates of misapplication. Without declaring, now, the measure of the bank's liability, or undertaking to define the rule by which it shall be determined, it is sufficient to say that the rights of the parties can never be ascertained without a full examination of the whole account and each item thereof. To reach a conclusion on the merits, an account will have to be stated between the parties. It would manifestly be impossible for a jury, in the time allotted for the consideration of a case, or at all, for that matter, to arrive at an accurate statement of the debits and credits and strike a balance. Its verdict would be guesswork. The authorities sustain the jurisdiction of equity in cases similar to the one presented by the bill of complaint. The decision in Hanks Dental Association v. International Tooth Crown Co., 194 U. S. 303,

24 Sup. Ct. 700, 48 L. Ed. 989, makes the necessity for retaining the case in equity all the more apparent.

2. This is not a suit for discovery in the technical sense. Pomeroy's Equity (3d Ed.) § 142. The object in view being an accounting, and as a result a decree for the amount found to be due, the discovery here sought does not belong to the auxiliary jurisdiction exercised by courts of equity in aid of an action at law or some other proceeding, but is only incidental to the equitable action. "The suit for a 'discovery' belonging to the auxiliary jurisdiction, as described in the foregoing paragraphs, should be carefully distinguished from the so-called 'discovery' which may be, and ordinarily is, an incident of every equitable action. It is a part of the ordinary equity procedure that whatever be the relief sought, and whether the jurisdiction be exclusive or concurrent, the plaintiff may, by means of allegations and interrogations contained in his pleading, compel the defendant to disclose by his answer facts within his own personal knowledge which may operate as evidence to sustain the plaintiff's contention. The name 'discovery' is also given to this process of probing the defendant's conscience, and of obtaining admissions from him, which accompanies almost every suit in equity; but it should not be confounded with 'discovery' in its original and strict signification, nor with that mentioned in the last preceding paragraph, which is sometimes made the ground for extending the concurrent jurisdiction of equity over cases otherwise belonging to the domain of the common-law courts." Id. § 144. The jurisdiction cannot rest upon discovery.

For the reasons already assigned, it is unnecessary to decide whether the jurisdiction may be sustained on the ground of fraud, or as involving a trust relation existing between the bank and the complainants; nor have I considered the effect to be given section 1050, Code Civ. Proc. Equity has concurrent jurisdiction with courts of law in matters involving fraud, and I incline strongly to the view that the bill is sustainable upon that ground.

3. It has been claimed that it appears by the allegations of the bill that complainants have been guilty of laches. This argument proceeds upon the theory, not that the suit was delayed, but that the complainants were guilty of such gross negligence in failure to check up, verify, and approve the accounts of their agent, Lane, that they ought not to be heard in a court of equity to complain of the defendants. Here it is alleged that the bank deliberately applied the funds of the complainants to the payment of Lane's liabilities to it. This charges an active, positive fraud. To say that complainants have been guilty of laches, because they did not sooner discover the fraud, would be carrying the doctrine to great lengths. Laches operates by way of estoppel, because of the inequity of claiming that which silence has led the other party to believe there was no claim to. It arises where there is a long acquiescence in the assertion of adverse rights. This presupposes knowledge of the facts. The rule does not apply where actual fraud is made out. Hammond v. Hopkins, 143 U. S. 224–274, 12 Sup. Ct. 418, 36 L. Ed. 134. Where jurisdiction is concurrent, courts of equity are bound by the statutes of limitations. Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431.

Taking the strongest possible view of it as against the complainants and their predecessors, the facts would be: They knew, or had sufficient to put them on inquiry, that their agent was carrying an account in their name with the defendant bank. The bank must be held to have known that the agent had only such authority as had been delegated to him, and that authority to draw for funds and carry an account with it was not authority to overdraw that account. The complainants could, therefore, rely upon it with assurance that the bank would not permit the violation of a rule so universally understood in the commercial world, and that it would not in any event knowingly apply funds, which it must take notice belonged to complainants, to the personal liabilities of their agent. Whatever the answer may disclose by way of laches, it cannot be said that complainants have estopped themselves by their own allegations.

The demurrer will, accordingly, be overruled.