Appeal of **OESTERLEIN MACHINE COMPANY.**                    Docket No. 45.

> The Board of Tax Appeals has jurisdiction to hear and determine appeals from determinations of deficiencies arising under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921.

Submitted November 10, 1924; decided December 11, 1924.

*Robert N. Miller, Esq.,* and *J. R. Sherrod, Esq.,* for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

*James Walton, Esq., Amicus Curiae.*

Before HAMEL, Chairman; GRAUPNER, IVINS, KORNER, MARQUETTE, SMITH, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal came on for hearing on a motion filed by the Solicitor on behalf of the Commissioner to strike the taxpayer's application for an order to take a deposition. The taxpayer's application is filed in accordance with the provisions of rule 41 of the rules of practice of this Board and is for an order to take the deposition of a certain designated witness whom the taxpayer proposes to examine as to facts bearing on the percentage of net income paid as profits tax by a corporation of which he is secretary and treasurer. The taxpayer proposes to offer such deposition as pertinent and material evidence touching a deficiency in tax determined by the Commissioner under the provisions of sections 327 and 328 of the Revenue Act of 1918, and proposed by the Commissioner to be assessed against the taxpayer for the years 1918, 1919, and 1920.

To the application of the taxpayer the Commissioner filed the following motion:

> Now comes the Commissioner of Internal Revenue by his attorney, Nelson T. Hartson, Solicitor of Internal Revenue, and moves to strike the application for order to take depositions filed by the taxpayer herein, and for grounds of his motion says:
>
> (1) The evidence of the witness, whose deposition it is proposed to take. is not and can not be made admissible, relevant, or competent for the purpose of proving the fact in issue; if, in fact, the Board has jurisdiction to entertain an appeal and review the action of the Commissioner in fixing a rate in compliance with the law in special assessment cases.
>
> (2) The United States Board of Tax Appeals has no jurisdiction to review the action of the Commissioner of Internal Revenue in granting or refusing to grant special assessment under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921 and, therefore, the testimony of the witness, if taken, could serve no purpose.
>
> (3) By section 328 of the Revenue Acts of 1918 and 1921, Congress has delegated to the Commissioner of Internal Revenue, subject to the restrictions and limitations contained in said section of the respective acts, authority to fix rates in making special assessments, and his action in the exercise of such authority can be reviewed or recalled only by the legislative body which gave such authority in the first instance.
>
> (4) In granting the authority to the Commissioner of Internal Revenue to fix rates for taxing income in special assessment cases as provided in section 328 (a) (b), Congress in subsection (c) requires the Commissioner to keep a record of all such cases, which records Congress has retained the right to review; and this Board can not draw unto itself such legislative functions, which is retained by Congress, to review the action of the Commissioner in special assessment cases.

(5) The rule of evidence as prescribed by Congress in section 328 for determining facts upon which the rates for special assessments are to be fixed does not embrace the testimony of witnesses.

Wherefore it is prayed that said application be denied.

The motion came on for hearing on November 1, 1924, and was argued by counsel for both parties as well as by *amicus curiae.*

## OPINION.

KORNER: The motion filed by the Solicitor on behalf of the Commissioner, is, in effect, a plea to the jurisdiction of this Board to hear and determine appeals filed by taxpayers from deficiencies in tax proposed to be assessed by the Commissioner, (1) in cases wherein the deficiency has been determined by the Commissioner under the provisions of sections 327 and 328 of the Revenue Act of 1918, or under sections 327 and 328 of the Revenue Act of 1921, commonly referred to as "special assessment" provisions, but in which cases the taxpayer contends that the tax should be computed without reference to such provisions; (2) in cases wherein the deficiency has been determined by the Commissioner without reference to the special assessment provisions, but in which cases the taxpayer contends that the tax should be computed under such provisions, and (3) in cases wherein the deficiency has been determined by the Commissioner under the special assessment provisions, but in which cases the taxpayer contends that such determination is in error, due to an incorrect computation of the tax under such special assessment provisions.

The motion to dismiss filed herein is based on two general propositions: (1) That a determination to assess the tax under the provisions of the special assessment sections, a refusal so to determine the tax, and the computation of the tax under those provisions when they are determined to be applicable, involve an exercise of discretion vested in the Commissioner by law, and that his decision and computations thereunder are not reviewable; and (2) that a review of the Commissioner's computation of the tax under the special assessment sections would necessitate making public in the hearing of the appeal certain records of the Commissioner in violation of the so-called "secrecy provisions" of the Revised Statutes.

The Revenue Act of 1924 created the Board of Tax Appeals and whatever of jurisdiction appertains to the Board is to be found in its provisions. Section 900(e) provides, in part:

The Board and its divisions shall hear and determine appeals under sections 274, 279, 308, and 312.

Section 280 of the same Act provides that taxes under prior Acts shall be computed under those Acts, but "the amounts so computed shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations  *  *  *  as in the case of the taxes imposed by this title  *  *  *."

The taxes involved in this appeal are income and profits taxes for the years 1918, 1919, and 1920. Section 280 of the Revenue Act of 1924 is contained in Title II of that Act, which title relates to income tax. In order, then, to determine the manner in which assessments of income tax for 1918, 1919, and 1920 are to be made, reference is had to Title II of the Revenue Act of 1924.

Section 274, which is a part of Title II of the Revenue Act of 1924, provides:

Sec. 274. (a) If, in the case of any taxpayer, the Commissioner determines that there is a *deficiency* in respect of the tax imposed by this title, the taxpayer, except as provided in subdivision (d), shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900.

(b) If the Board determines that there is a *deficiency*, the amount so determined shall be assessed and shall be paid on notice and demand from the collector. No part of the *amount determined as a deficiency* by the Commissioner but disallowed *as such* by the Board shall be assessed * * * (Italics ours.)

Section 273, which is a part of the same title and Act, provides:

Sec. 273. As used in this title the term " deficiency " means—
(1) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax.

Speaking more generally, the *deficiency* may be said to be the difference between the amount of tax imposed and the amount previously returned and/or paid by the taxpayer. It should be noted, that section 273 makes no exception as to any deficiency. No distinction is made between a deficiency arising under one section of the title and that arising under any other section of the title. The manner in which *deficiency* is used in section 274 taken with its definition in section 273, constitutes that term all-embracing under that title. It includes any amount determined as a deficiency by the Commissioner. The manner of the assessment and collection of all such deficiencies is controlled by the provisions of Title II of the Revenue Act of 1924 and is applicable to each and every section of that title not specifically excepted. That this is true is evidenced by the fact that Congress deemed it necessary, in a case intended to be excepted, to make express provision therefor. Such exception appears in section 278 of the Revenue Act of 1924 which provides, in part, as follows:

Sec. 278 * * * (b) Any deficiency attributable to a change in a deduction tentatively allowed under paragraph (9) of subdivision (a) of section 214, or paragraph (8) of subdivision (a) of section 234, of the Revenue Act of 1918 or the Revenue Act of 1921, may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

The above section provides an exception to the otherwise inclusive manner of assessment and collection of deficiencies generally under Title II. The statute provides no exception as to the manner of assessment and collection of deficiencies arising under the special assessment sections.

It must follow, then, that Congress intended that an appeal should lie to the Board from a deficiency arising from a determination involving the special assessment provisions above referred to, unless the statute elsewhere makes it clear that the Commissioner alone is vested with conclusive determinative authority by reason of discretionary powers granted to him, or unless it is made equally clear that the Revenue Act of 1924 has not modified the so-called " secrecy

provisions " in such manner as to give the Board authority effectively to consider such appeals.

In support of such discretionary authority in the Commissioner, which it is argued is unreviewable and gives rise to an implied exception in respect of deficiencies arising under the special assessment sections, Government counsel rely on the language employed in section 327 of the Revenue Acts of 1918 and 1921. Except for a slight change which has no bearing in this consideration, the language of that section is identical in both the acts referred to. Section 327 of the Revenue Act of 1918 provides, in part:

> Sec. 327. That in the following cases the tax *shall be* determined as provided in section 328: (a) Where the Commissioner is unable to determine the invested capital as provided in section 326; (b) In the case of a foreign corporation; (c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively; (d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. (Italics ours.)

Let us examine this section. In the first place the determination under section 328 is mandatory under the conditions enumerated in the subdivisions of section 327. In subdivision (a) the condition is that the Commissioner shall be unable to determine the invested capital as provided in section 326. It is not discretionary with him whether he shall be unable so to determine. It specifically makes his inability so to determine the test. If the Commissioner confesses his inability in this respect and for that reason determines a deficiency in tax under section 328, and from such determination the taxpayer appeals, can it be reasonably argued that since the Commissioner could not, no one else may? In our opinion subdivision (a) does not confer such unreviewable discretion on the Commissioner nor does it give rise to an implied exception in the statute. Subdivision (b) makes it mandatory that the tax shall be determined under section 328 in the case of a foreign corporation. No discretion is conferred on the Commissioner by this subdivision. What we have just said relative to subdivision (a) is equally applicable to subdivision (c), except in so far as "unable to determine " is modified by " satisfactorily." This modification, however, supports the view above expressed because it connotes an ability to determine, partially at least, certain values which might, upon careful review, be completely determined.

Subdivision (d) is the principal reliance of Government counsel. Therein the condition is expressed that the Commissioner " find " and so declare of record that an abnormality exists. This subdivision presupposes his ability to determine invested capital and the respective values of certain classes of property paid in for stock, in accordance with subdivisions (a) and (c). Thus we face the issue whether the use of the word " find " as here used, vests the unreviewable discretion in the Commissioner, contended for by Government counsel, and thereby creates an implied exception in the

law relative to appeals from " deficiencies." If this issue be resolved affirmatively, then it would seem to follow irresistably that a similar conclusion must be applied to a number of instances in the Revenue Act of 1924 wherein the Commissioner, in pursuance of his official duties, is required to make determinations based upon findings made by him. A recital of some of these instances will disclose that the word " find " does not have the cogent significance argued for it.

In section 204 there is provided the basis for determining gain or loss from the sale or other disposition of property acquired by gift after December 31, 1920. In paragraph (2) of subdivision (a) it is provided that " if the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner." The construction argued for by the Government would deprive the taxpayer of an appeal on the question of the fair market value of such property.

A similar duty is laid by statute on the Commissioner in section 205 in determining the basis for inventories. An appeal would not lie from a deficiency predicated upon inventories taken on a basis prescribed by the Commissioner, irrespective of the correctness of such basis, if the contention of the Government be sound in the instant appeal.

Another example is found in section 206(b) with reference to production of evidence satisfactory to the Commissioner with respect to a net loss. Such a deficiency was recently before the Board in the *Appeal of Carroll Chain Co.*, 1 B. T. A. 38, in which appeal the Commissioner conceded jurisdiction in the Board.

Again in section 216(a) relating to the allowance of credits for the purpose of the normal tax, the Commissioner is charged with determining to his satisfaction whether more than 50 per cent of the gross income of foreign corporations was derived from sources within the United States.

The authority in the Commissioner to find, to fix, to determine, and the like, is found in many instances under prior revenue acts. This has not been held to confer an unreviewable discretionary power. The judgment of the Commissioner has been reviewed by the courts in numerous cases of this character. The Commissioner is required to determine March 1, 1913, value as a basis of depletion and depreciation. He is charged with a similar duty with reference to the value of legacies and decedents' estates under the estate tax provisions. He determines the value of property included in invested capital and likewise the value of capital stock under the capital stock tax provisions. In all of the instances referred to, as well as in many others of a similar character, the courts have undertaken to review the judgment of the Commissioner.

It is clear that the phraseology employed in section 327 was not intended as significant to the extent of creating an implied exception to the otherwise clearly expressed intendment of the statute relative to appeals.

The second proposition argued by Government counsel in support of the instant motion is that it was the intent of Congress to vest

in the Commissioner sole authority to fix rates in special assessment cases and compute the taxes thereunder, and that his action under such authority is unreviewable; that this intent on the part of Congress is made clear by the enactment of the so-called " secrecy provisions " contained in section 3167 of the Revised Statutes as reenacted by section 1018 of the Revenue Act of 1924; that a consideration of an appeal involving such computations would necessitate making public the records of the Commissioner upon which such computations are based, in violation of section 3167 of the Revised Statutes referred to.

Section 1018 of the Revenue Act of 1924 provides, in part:

SEC. 1018. Sections * * * 3167 * * * of the Revised Statutes, as amended, are reenacted without change as follows: * * *

SEC. 3167. It shall be unlawful for any collector, deputy collector, agent, clerk, or other officer or employee of the United States to divulge or to make known in any manner whatever *not provided by law* to any person the operations, style of work, or apparatus of any manufacturer or producer visited by him in the discharge of his official duties, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person *except as provided by law;* and it shall be unlawful for any person to print or publish in any manner whatever *not provided by law* any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return. * * * (Italics ours.)

From the reading of the foregoing it is apparent that Congress intended to provide exceptions to the general inhibition contained therein, and that these exceptions were to be those " provided by law." One notable and specific exception is contained in section 257 of the Revenue Act of 1924, which provides in part:

SEC. 257. (a) Returns upon which the tax has been determined by the Commissioner shall constitute public records; but they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the secretary and approved by the President. * * *

(b) The Commissioner shall, as soon as practicable in each year, cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal-revenue district and in such other places as he may determine, lists containing the name and the post-office address of each person making an income-tax return in such district, together with the amount of the income tax paid by such person.

Pursuant to the foregoing, the Secretary of the Treasury, with the approval of the President, on September 27, 1924, promulgated Treasury Decision 3638, providing regulations for giving effect to the statute.

Section 3167 of the Revised Statutes appears in the Revenue Act of 1918 in the same phraseology as above. On January 12, 1920, the Commissioner, with the approval of the Secretary, promulgated Treasury Decision 2962, in which it is said:

There are numerous provisions in the statutes constituting the doing or failure to do certain things offenses against the United States, and providing for collecting unpaid taxes by suits in courts, and for bringing suits to recover taxes and penalties wrongfully collected. These provisions would be of no avail were it held that the returns themselves, or certified copies thereof, provided for in section 822, Revised Statutes, could not be used by the Government as evidence in such litigation or in preparation for same. *Manifestly Congress did not, when it enacted section 3167, Revised Statutes, intend to defeat prosecutions and suits in court for which it has specifically provided.*

Income returns filed with the department as public records of the department, and public records in the Treasury Department are of right available as evidence in litigation in court unless there is some statute making it unlawful to use them as such [citing judicial decisions]. As, therefore, the use of income returns or copies thereof in connection with litigation in court where the United States Government is interested in the result *is provided for by law,* such returns or copies may be furnished for use without a violation of the provisions of section 3167, Revised Statutes, as amended. (Italics ours.)

Rules and regulations are there prescribed for giving effect to the foregoing.

On June 30, 1921, the Commissioner, with the approval of the Secretary, promulgated Treasury Decision 3188, amending Treasury Decision 2962 and Regulations 45, (1920 edition), article 1091. It is said therein:

The original income return of an individual, corporation * * * or a copy thereof, may be furnished by the Commissioner of Internal Revenue to a United States attorney for use as evidence before a United States grand jury or in litigation in any court, where the United States is interested in the result, or for use in the preparation for such litigation, or to an attorney connected with the Department of Justice designated to handle such matters * * *. When an income return or copy thereof is thus furnished, it must be limited in use to the purpose for which it is furnished and is under no condition to be made public *except where publicity necessarily results from such use.* (Italics ours.)

The same provisions are contained in Regulations 62, Article 1091, promulgated under the Revenue Act of 1921.

We call attention to the foregoing to show that it has been a recognized policy of the Government under the law as contained in section 3167 of the Revised Statutes, to make public the records of the Treasury Department in litigation specifically provided for by law. The law as contained in the Revenue Act of 1924 establishes the Board of Tax Appeals and provides that it shall be an independent agency in the executive branch of the Government. An agency for what purpose? Section 900(e) provides, "The board and its divisions shall hear and determine appeals filed under sections 274, 279, 308, and 312." Having so provided it would follow by necessary implication that the Board is endowed with all the necessary authority to effectuate the purpose for which it was created. But Congress conferred this authority expressly rather than by implication. Subdivision (i) of section 900 of the Act provides, in part:

(i) For the efficient administration of the functions vested in the Board * * * any member * * * may administer oaths, examine witnesses, and require, by subpœna * * * (1) the attendance and testimony of witnesses, and the production of all necessary returns, books, papers, documents, correspondence, and other evidence, from any place in the United States at any designated place of hearing, (2) the taking of a deposition before any designated individual competent to administer oaths under this Act, and (3) the answer in writing under oath to any question of fact submitted * * *.

Section 1025(a) of the Revenue Act of 1924 provides:

If *any* person is summoned under this Act to appear, to testify, or to produce books, papers, *or other data,* the district court of the United States for the district in which such person resides shall have jurisdiction by appropriate proceedings to compel such attendance, testimony or production of books, papers, or other data. (Italics ours.)

After conferring the authority and powers above outlined, on the Board, Congress in the same Revenue Act which reenacted section

3167 of the Revised Statutes, provided in subdivision (h) of section 900, of the Revenue Act of 1924:

Notice and opportunity to be heard shall be given to the taxpayer and the Commissioner. * * * Hearings before the Board and its divisions shall be open to the public. * * * It shall be the duty of the Board and of each division to make a report in writing of its findings of fact and decision in each case, and a copy of its report shall be entered of record and a copy furnished the taxpayer. * * * All reports of the Board and its divisions and all evidence received by the Board and its divisions * * * shall be public records open to the inspection of the public * * *.

We are of the opinion that Congress intended, and has clearly indicated, that the general secrecy provisions of the law should not have the effect of ousting jurisdiction of appeals specifically granted by it to this Board. It is apparent that Congress intended to confer on the Board the power necessary to effectuate the purposes for which it was created. Indeed it is fundamental that every court or tribunal has inherent power to do all things that are reasonably necessary to the administration of justice within the scope of its jurisdiction. Compelling the production of *all evidence* pertinent and material to a cause at issue before it, is unquestionably one of such powers.

We are of opinion that jurisdiction is conferred on this Board to hear and determine appeals arising out of the special assessment provisions heretofore referred to, and that in granting such jurisdiction the provisions of the Revenue Act of 1924 are clear and unambiguous and not susceptible to the restrictions, limitations, and exceptions contended for by Government counsel. However, since this contention has been so earnestly urged it may not be amiss to aid our interpretation of such intent by reference to the history of the legislation creating the Board. The United States Circuit Court of Appeals, Eighth Circuit, in the case of *United States* v. *Ninety Nine Diamonds, et al.*, 139 Fed. 961, at page 966, said:

The clear words of the statute, their certain meaning, the legal requirement that all the terms of the section which are consistent with each other shall be given effect, *a consideration of the subject of the legislation, of the object which the Congress was seeking to attain and of the evil which it was endeavoring to remedy*, point unerringly to the same result. (Italics ours.)

(Writ of certiorari denied by the Supreme Court, 201 U. S. 645; 50 L. Ed. 903.)

The object which Congress sought to attain, the evil it endeavored to remedy, and the consideration given the subject of the legislation creating this Board are succinctly stated in the reports of the House and Senate committees, from which the following extracts are quoted:

The committee recommends the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of *an additional assessment of income, excess-profits, war-profits*, or estate taxes. (Italics ours.) [House Report No. 179, p. 7.]

Under the existing law a taxpayer prior to the payment of his tax may appeal to the Commissioner, who has established the committee on appeals and review, to determine these appeals for him. The objections that have been raised to this procedure are four: (1) The appeal is from the action of the Bureau of Internal Revenue but is taken to a committee in and a part of the bureau. It is urged that such an appeal does not involve a review by an impartial outside body, such as the taxpayer is entitled to prior to payment of the tax. (2) In the hearing on the appeal the person who is to decide the appeal acts both as advocate and judge, since he must both protect the inter-

ests of the Government and decide the questions involved. Such conditions do not insure an impartial determination of the case. (3) If the decision on the appeal is in favor of the Government, the taxpayer has the right to test the correctness of the decision in the courts, but if the decision is in favor of the taxpayer, the action of the bureau is final and the correctness of the decision can never be tested in the courts. It is contended that this condition results in the decision of most doubtful points in favor of the Government. (4) The taxpayer is usually forced to come to Washington for the hearing on his appeal, an expensive and burdensome procedure. [Id., pp. 7 and 8.]

To meet the objections given above, the committee recommends that there be established a Board of Tax Appeals, * * * to hear *all appeals from the assessment of additional income, war-profits, excess-profits,* and estate taxes. * * * Both the Government and the taxpayer will appear before the Board and present their cases, and the decision of the Board will be final as to the amount of tax to be paid. (Italics ours.)    [Id. p. 8.]

The bill provides for the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of *an additional assessment of income, excess-profits,* war-profits, or estate taxes. * * *

Under the existing law a taxpayer prior to the payment of his tax may appeal to the Commissioner, who has established the committee on appeals and review to determine these appeals for him. * * *

Under the provisions of the proposed bill creating a Board of Tax Appeals the taxpayer may, prior to the payment of the *additional assessment of income, war-profits, excess-profits, or estate taxes, appeal to the Board of Tax Appeals* and secure an impartial and disinterested determination of the issues involved. In the consideration of the appeal both the Government and the taxpayer will appear before the Board to present their cases, with the result that each member of the Board will sit solely as judge and not as both judge and advocate. * * * *This proposal meets all the objections that have been raised as to the existing system* and at the same time provides for a flexible and informal procedure which will permit the board to determine expeditiously the cases brought before it on appeal. (Italics ours.)    [Senate Report 398, pp. 8 and 9.]

We are of opinion that the language employed in the Revenue Act of 1924 confers on this Board jurisdiction of appeals involving deficiencies arising out of the application by the Commissioner of the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921, as well as deficiencies arising out of a failure by the Commissioner to apply those provisions in proper cases. The motion of the Solicitor on behalf of the Commissioner is denied.